[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiff, Beverly Scovish (Scovish), brought an action against the defendant, the Upjohn Company (Upjohn), alleging that her husband's suicide was caused by the side-effects of Halcion, an allegedly defective prescription drug manufactured by Upjohn. Before the court is plaintiff's motion to compel the production of a so-called bates-stamp index (index) and database of the CT Page 13152 defendant.
During the course of discovery, the plaintiff learned of a document retrieval system constructed by the defendant's attorneys. The system was constructed in an effort to comply with discovery requests of other plaintiffs as well as to assist Upjohn's attorneys in the preparation of its defense in this case and other Halcion cases pending nationally. In coding many documents related to Halcion, Upjohn has also allegedly produced a bates-stamp index and database that references and indexes many pertinent documents and studies of Halcion. Upjohn claims that the index and the database are protected from discovery because the material is opinion work product. According to Upjohn's brief, "the decision to collect the documents, their organization and the methodology employed all reflect the decisions and mental impressions of litigation attorneys in response to litigation needs in pending Halcion cases." (Defendant's brief, p. 7). Even if the court were to find that the index and database are merely fact work product, Upjohn asserts that Scovish has failed to demonstrate a substantial need for them. Upjohn proffers that it has previously given Scovish the opportunity to visit a document repository in Kalamazoo, Michigan where she could wade through thousands of pages of documents and select relevant files to copy.
In support of her motion to compel the production of the index and database, the plaintiff asserts that it is not protected under the work product doctrine, and that even if it is, the index is ordinary work product for which the plaintiff has a substantial need. According the plaintiff, "her `substantial need' flows from the very nature of this action. As the plaintiff claims that Halcion was, and is, a defective pharmaceutical product, she needs many of the hundred of thousands of documents, in the defendant's possession. . . . Second, the plaintiff is unable without undue hardship to obtain the substantial equivalent of the material by any other means." (Plaintiff's brief, p. 14)
DISCUSSION
"The discovery rules are designed to facilitate trial proceedings and to make a `trial less a game of blindman's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." Caccavale v. Hospitalof St. Raphael, 14 Conn. App. 504, 507, 541 A.2d 893, cert denied, CT Page 13153208 Conn. 812, 541 A.2d 1241 (1988), quoting United States v.Proctor Gamble, 356 U.S. 677, 682 (1958). "The granting or denial of a discovery request rests in the sound discretion of the court. . . . Discretion is limited, however, by the rules pertaining to discovery." (Citation omitted; internal quotation marks omitted.) Beal v. Washton, 39 Conn. Sup. 167, 168,472 A.2d 812 (1983).
Our Supreme Court has noted that "[w]ork product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation. The attorney's work must have formed an essential step in the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys." Stanely Works v. New BritainRedevelopment Agency, 155 Conn. 86, 95, 230 A.2d 9 (1967). Subsequently, the definition of work product was refined and codified by Practice Book § 219 which states:
 Subject to the provisions of Sec. 220, a party may obtain discovery of documents and tangible things otherwise discoverable under Sec. 218 and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall not order disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
Based on the defendant's brief and attached affidavits, the court is convinced that the bates-stamp index and database constitute attorney work-product. In his affidavit, Attorney Harold J. Decker, a vice-president of corporate law-litigation at Upjohn, avers that in 1989 certain Halcion related documents were collected and later codified in response to other discovery requests. (Defendant's exhibit 8, Affidavit of Harold S. Decker, Esq. ¶ 6). Attorneys for UpJohn also sifted through the reams of documents and selected other relevant files that the legal CT Page 13154 staff thought would be useful in any pending or subsequent litigation, but not all "files or categories of Halcion documents were collected." (Defendant's exhibit 8, Affidavit of Harold S. Decker, Esq. ¶ 7). Once the files and documents were selected, they were bates-numbered, and then information about each document was entered into a computer data base. (Defendant's exhibit 5, Affidavit of Vivian W. McLeod, Esq. ¶ 5).
The court finds that the bates-index and accompanying data base are work product under Practice Book § 219 because they were produced in anticipation of litigation, and because of substantial attorney involvement in the selection, coding, and categorization process.
A finding of work-product, however, does not end the analysis. The court must determine whether the bates-stamp index and database constitutes "opinion work product" or "ordinary or fact work product." "Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws. . . ." Sporck v. Peil, 759 F.2d 312, 316
(2nd Cir. 1985). Under Practice Book § 219, opinion work product is highly protected, and does not appear to be discoverable. See Capalbo v. The Balf Company, 9 CSCR 285 (Feb. 28, 1994). On the other hand, ordinary work product is any material that does not meet the definition of opinion work product, and can be ordered produced upon a showing of substantial need and undue hardship. See, 4 Moore's FederalPractice Digest ¶ 26.15[3].
The defendant relies on Sporck v. Peil, supra, 759 F.2d 316 for the proposition that "[t]he selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." Id. 316. The court noted:
 In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this . . . the process of selection and distillation is often more critical than pure legal research.
Id. CT Page 13155
Because the defendant's attorneys sifted through thousands of documents and selected those that they thought were relevant, Upjohn claims that the index and database to these documents or files constitutes opinion work product.
In Sporck, the plaintiff had previously discovered and retained the documents at issue, and he merely wanted the defendant to identify those documents which defense counsel has selected in preparing the defendant for his deposition. The court held that the selected documents, out of thousands previously produced, constituted non-discoverable opinion work product merely because they had been specially selected by defense counsel in preparing his client. In a strongly worded dissent, Judge Seitz noted:
 [p]resumably, the petitioner's argument must be that if the respondents knew which documents were reviewed, they could, upon examination of the documents identified, draw conclusions as to why each document was chosen. The problem with the petitioner's theory is that it assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected for review by the deponent.
Id. 319.
Reflecting the concern of the dissent in Sporck, the United States Court of Appeals for the Second Circuit, in Gould v.Mitusi Mining Smelting Co., 825 F.2d 676, 679-80 (2nd Cir. 1987) noted that:
 [d]ocuments received by [defense counsel] from its clients, which would not be privileged if they remained in clients' hands would not acquire [work product] protection merely because they were transferred to [counsel]. The narrow exception to this rule formulated in [Sporck] that the selection and compilation of documents by counsel for litigation purposes is protected opinion work product, may be applicable, but its application depends upon the real, rather than speculative concern that the thought process of . . . counsel in relation to pending or anticipated litigation would be exposed. Furthermore, the equities might not favor the application of the Sporck exception CT Page 13156 if the files from which documents had been culled by [counsel] were not otherwise available to [the party] or were beyond reasonable access to [the party].
(Emphasis added.)
Thus, the Sporck rule does not seem to be as absolute as the defendant asserts. Moreover, Upjohn's concern that the plaintiff might discover the thoughts, opinions and the strategies of defense attorneys must be real, and not based on speculation. By defendant's own admission, "a print-out of database information for all documents that have been collected would number more than one hundred thousand pages." (Defendant's exhibit 5, Affidavit of Vivian W. McLeod, Esq. ¶ 8) Because of the astronomical number of documents involved in this case, it is highly unlikely that Upjohn's mental impressions would be exposed by production of such an index or database. The sheer amount of documents involved is what led the plaintiff to seek the index and database in the first place.
To the extent that the bates-stamp index and database contain the written subjective comments as to the value, theory or strategy behind the selection of documents or files, such comments constitute opinion work product which should be redacted from the material. On the other hand, the mere identification of a document or files selected by Upjohn (i.e. by title, date sent, author, recipient, etc.,) to be included in the index or database constitutes ordinary work product. Even if the court's categorization of this material is erroneous, the court finds that the defendant has not shown that there is any realistic chance that the mere identification of the documents would disclose legal strategies or theories of their defense. Furthermore, the equities of the situation favor production of the index and database by the defendant.
The plaintiff's underlying suit claims that Upjohn manufactured a defective pharmaceutical product. The development, testing, manufacture and governmental review of this drug, as the discovery battles of this case demonstrate, produced hundreds of thousands of documents that the plaintiff has a right to review. Merely offering the plaintiff to search a warehouse in order to retrieve relevant documents is unrealistic and needlessly time consuming given the fact that an index and database exists that can expedite discovery and level the playing field. Thus, the court finds that the plaintiff has demonstrated a substantial CT Page 13157 need for the bates-stamp index and database, and that undue hardship would exist if the index and database were not produced.
Relying on this court's broad discretion in fashioning discovery orders, the court orders that the defendant supply the plaintiff with a copy of its bates-stamp index and accompanying database after the defendant has redacted those portions of the material which may contain the subjective thoughts, opinions, strategies, or legal theories of its attorneys. To the extent that this material is contained in a computerized format or stored on magnetic tape(s) or other like electronic storage devise(s), the defendant can supply the plaintiff, at her request, with said material in lieu of a printed hard copy.
CONCLUSION
Subject to the above-stated limitations, the plaintiff's motion to compel production of the bates-stamp index and database in granted, and the defendant's objection is overruled.
Hurley, J.